**Johnny RODRIGUEZ, Appellant,**

v.

**The STATE of Texas.**

No. 290–01.

Court of Criminal Appeals of Texas.

March 26, 2003.

Dissenting Opinion on Denial of Rehearing May 21, 2003.

Frank B. Suhr, New Braunfels, for Appellant.

Dib Waldrip, DA, New Braunfels, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, KEASLER and HOLCOMB, JJ., joined.

When a defendant has been charged with delivering cocaine to a minor "on or about" a certain date and the minor testifies that the defendant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding this date, has the minor provided testimony of offenses extraneous to the charged offense? No. And, can a minor be an accomplice to a defendant's delivery of cocaine to her? No.

A jury convicted appellant of delivering a controlled substance to a minor. *See* Section 481.122, Health and Safety Code. The indictment alleged that appellant committed this offense "on or about" September 9, 1998. K.R., who is appellant's daughter, testified that appellant delivered cocaine to her on September 9, 1998.

She also testified on redirect examination that appellant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding the September 9th date alleged in the indictment. Appellant objected to this evidence on the basis that it was extraneous to the offense charged in the indictment and offered solely for a character conformity purpose under Rule 404(b) of the Texas Rules of Evidence. The prosecution offered the evidence as extraneous offense evidence that was admissible for a noncharacter conformity purpose under Rule 404(b). The trial court decided that the evidence was admissible for a noncharacter conformity purpose under Rule 404(b). The trial court also decided that "those occasions [other than the September 9th delivery] are within the three-year statute of limitations; and, therefore, are offenses that are described within the indictment." Our review of the record indicates that neither party claimed that the trial court erroneously admitted the evidence on this latter basis.

[PROSECUTION]: Okay. I don't know if that suffices for the high points. And I think the door is basically has been opened in order to prove something other than character conformity in regard to those extraneous offenses, which technically would be probably the same criminal episode under the definition of

Criminal Episode in that it is—the criminal episode—it's either the Penal Code or Code of Criminal Procedure. But it's 302, I believe.

Whichever book we're talking about says that it's the same as a repeated commission of the same offense. And we're dealing with on or about September 9th. We're basically talking about the same criminal episode in that these are repeated offenses that tend to indicate something other than character conformity, such as identity, since identity is evidently an issue based upon the cross-examination; and also opportunity; knowledge; and lack of mistake or accident.

You know, the repeated commission of that under the Doctrine of Chances—and I can go run and get the case law that indicates to you the analysis and rationale behind that. I'm not going to say that I can spout it off—off my tongue as to why that type of evidence is admissible, but it's under those theories when there has been some type of cross-examination.

Certainly I would even request a limiting instruction to properly curtail the jury's consideration of that evidence to focus in on those issues. Identity clearly has been brought into question here as to who has provided this specific drug.

And I tried to very surgically limit the questions on direct to that one occasion, and I think that on cross is the first time that the true emphasis in regarding identity came into play.

[THE COURT]: What are your objections?

[APPELLANT]: My objections are under 403 and 404. And I do have case law, if I may approach and provide you a copy. I've outlined the portions, Your Honor. I think the sole purpose for this would be to try to prove the act or conformity of that, and that's not allowed under 404.

The case, I think, has a very appropriate paragraph back on about the—I think it's Page 22, the right-hand column. This case is dealing with a possession of cocaine. They claimed he possessed cocaine previously in the Perry case, and we have the same type of problem here. He's claiming that he's given—the evidence by the D.A. is that he had allegedly given her cocaine sometime previously. That's not the crime he's been accused of today.

As far as it being a criminal episode, it seems like a long time: nine months. I don't think that's still the same episode. This is the first time he has tried to introduce this type of evidence. I think when you look at the Montgomery case that it clearly talks about how the Court needs to weigh the evidence and the likelihood that what the witness is saying is true and accurate.

There's absolutely no supporting evidence for that, Your Honor. No one else can confirm that he's been giving her this cocaine on 30 separate occasions. She could say 50, and no one could confirm that. I think the likelihood of this occurring is very suspect, Your Honor. I think that was one of the things that was considered in not allowing this type of evidence in.

I believe that the prejudicial value—the probative value is substantially outweighed by the prejudicial effect it will have on my client

\*    \*    \*    \*    \*    \*

[THE COURT]: Let the record reflect that it is Wednesday morning and the jury is not in the courtroom. The issues that were brought before the Court yesterday evening regarding [K.R.'s] testi-

mony as to the occasions other than September 9th wherein she will allege that cocaine was provided to her by the defendant has been discussed in depth and reviewed in depth by the Court. And, Counsel, the Court is of the opinion that—and according to the case law that I have reviewed and have been provided to me—that those occasions are within the three-year statute of limitations; and, therefore, are offenses that are described in the indictment.

In the alternative, I do not believe I have to go to the balancing portion of 404(b) regarding extraneous offenses. However, if I do, I believe that it is a rebuttal of a defensive theory. It goes to identity, opportunity, possibly even motive. And, therefore, if it were to be within the Court's discretion under 404(b), I would allow it there, also.

Appellant claimed on direct appeal that the trial court erroneously admitted as extraneous offense evidence under Rule 404(b). K.R.'s testimony that appellant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding the September 9th date alleged in the indictment. Relying on this Court's decisions in *Sledge v. State* and *Rankin v. State*, the Court of Appeals decided that this evidence "was not evidence of extraneous offenses, but rather evidence of the *repeated commission of the offense* alleged in the indictment" and that, under these

circumstances, appellant's remedy was to require the prosecution "to elect the occurrence in which it sought to rely for conviction." *Rodriguez*, 31 S.W.3d at 775–76; *see Sledge v. State*, 953 S.W.2d 253 (Tex. Cr.App.1997); *Rankin v. State*, 953 S.W.2d 740 (Tex.Cr.App.1996).[1]

Appellant also challenged on direct appeal the sufficiency of the evidence to support his conviction. In support of this claim, he argued for the first time that K.R. was an accomplice whose testimony was not "adequately corroborated" which made the evidence insufficient to support the conviction. *Rodriguez v. State*, 31 S.W.3d 772, 774–75 (Tex.App.-Austin 2000). Though the record reflects that appellant did not request and the trial court did not *sua sponte* submit an accomplice witness instruction in the jury charge, the Court of Appeals nevertheless addressed appellant's sufficiency claim and decided that K.R. was not an accomplice. *Id.*

We granted appellant's discretionary review petition to determine: (1) whether the Court of Appeals erroneously held that K.R.'s testimony that appellant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding the September 9th date alleged in the indictment was not extraneous offense evidence;[2] and (2) whether appellant was entitled to an accomplice witness instruction under Article 38.14 of the Texas Code

1. Though the record reflects that the prosecution offered the evidence as extraneous offense evidence for a noncharacter conformity purpose under Rule 404(b), the prosecution did not object when the Court of Appeals upheld the admission of the evidence on the basis that it was nonextraneous offense evidence of misconduct charged in the indictment. *See Rankin*, 953 S.W.2d at 742–43 (Meyers, J., concurring). We will, therefore, consider the evidence to have been admitted for this purpose.

2. Ground one of appellant's discretionary review petition states:

> Where the indictment on its face alleges only one (1) occurrence of delivery of a controlled substance, does [*Sledge*] allow the introduction of 20 to 30 prior controlled substance deliveries to the same person under the theory that the deliveries are actually part of the charged offense, and thereby evade the provisions of Rules 404(b) and 403, Texas Rules of Evidence?

of Criminal Procedure.[3] We will affirm the judgment of the Court of Appeals.

## I. GROUND ONE

■ The Court of Appeals applied well-settled law set out in our decisions in *Rankin* and *Sledge* and we are not inclined to revisit those decisions which answer the contentions made in appellant's brief. *See, e.g., Rankin,* 953 S.W.2d at 742–43 (Meyers, J., concurring) (summarizing the well-settled law applicable to cases like this). Based on these decisions, we hold that K.R.'s testimony that appellant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding the September 9th date alleged in the indictment was not evidence of extraneous offenses and that appellant's remedy was to require the State to elect the occurrence on which it sought to rely for conviction. *See id.*

■ The benefit a defendant receives in cases like this is that, absent an election, he cannot later be prosecuted for the separate acts of misconduct upon which the jury could have convicted the defendant. *See Rankin,* 953 S.W.2d at 743 (Meyers, J., concurring) (subsequent prosecution for any such instance of misconduct is jeopardy-barred because it is impossible to determine which offense the jury actually found the defendant guilty of). Appellant, therefore, cannot be prosecuted for delivering cocaine to K.R. "maybe 20 or 30 times" during the nine-month period preceding the September 9th date alleged in the indictment. *See id.*

It has been suggested that *Rankin* and *Sledge* should not apply here because K.R.'s "general and vague" testimony that appellant delivered cocaine to her "maybe 20 or 30 times" proved no offense especially in the absence of testimony "identifying the substance delivered on the 20 to 30 occasions." Testimony that a defendant delivered cocaine "maybe 20 or 30 times" is sufficient to support a conviction for a delivery offense. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ It has also been suggested that the usual remedy of an election in cases like this does not apply here because "it would have been impossible for the State to make an election in the absence of any testimony distinguishing one incident from another." The State, however, could have easily made an election. It could have elected "at least one occurrence" instead of "maybe 20 or 30" occurrences.

## II. GROUND TWO

■ Appellant asserts that K.R. was a party (and, therefore, an accomplice) to the delivery offense. A "person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a less-included offense." *Medina v. State,* 7 S.W.3d 633, 641 (Tex.Cr.App.1999), cert. denied, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). A "person is criminally responsible [as a party to] an offense committed by another if ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the person to commit the offense." Section 7.02, Texas Penal Code.

K.R. is not a party to the delivery offense that appellant committed even

---

**3.** Ground two of appellant's discretionary review petition states:

Can a defendant be denied the protections of the accomplice witness rule under Article 38.14 Texas Code of Criminal Procedure merely because an affirmative defense is available to the accomplice?

though appellant could not have committed this offense without K.R.'s participation. As the Third Court of Appeals discussed in *Robinson v. State*, there is an exception to the law of criminal responsibility "where the crime is so defined that participation by another is inevitably incident to its commission." 815 S.W.2d 361, 363 (Tex. App.-Austin 1991, no pet.) (citing 2 W. LaFave & A. Scott, *Substantive Criminal Law* Section 6.8(e) at 165–66 (1986)). *Delivery* is such an offense. Like the Third Court of Appeals, we find the opinion of the Wyoming Supreme Court in *Wheeler v. State* instructive:

> There is a definite distinction between a seller and a buyer. Their separate acts may result in a single transaction, but the buyer is not aiding the "selling act" of the seller and the seller is not aiding the "buying act" of the buyer. The buyer and seller act from different poles.... An accomplice is one who participates in the same criminal conduct as the defendant, not one whose conduct is the antithesis of the defendant, albeit the conduct of both is involved in a single transaction.

*Wheeler*, 691 P.2d 599, 602 (Wyo.1984).

Here, K.R., as the recipient of the cocaine, was not aiding the "delivering act" by appellant. Any offense stemming from K.R.'s *receipt* of the cocaine is separate from the delivery that appellant committed. Once appellant transferred possession of the cocaine to K.R., his participation in *that* offense, the offense with which he was charged, ceased. The two offenses are hermetically separated. While K.R. may have committed some type of offense by receiving the cocaine, she did not commit the same offense that appellant committed, and, therefore, she

could not have been prosecuted for the delivery offense that appellant committed. Any other holding would require the Court to accept the nonsensical proposition that in this particular case K.R. was guilty of delivering cocaine to herself and that a female minor who has consensual sex with an adult can be guilty of committing a sexual assault against herself.

The judgment of the Court of Appeals is affirmed.

MEYERS, J., filed a dissenting opinion in which PRICE, JOHNSON, and COCHRAN, JJ., joined.

COCHRAN, J., filed a dissenting opinion in which MEYERS, PRICE, and JOHNSON, JJ., joined.

MEYERS, J., filed a dissenting opinion joined by PRICE, JOHNSON, and COCHRAN, J.J.

Judge Cochran's dissenting opinion does an excellent job of explaining how the two cases [1] on which both the Court of Appeals and the majority rely are not dispositive of the appellant's complaint. It is disappointing that the majority has clung to such tenuous and inapposite authority to almost summarily dismiss a question of law which has huge repercussions on the introduction of extraneous offenses at the guilt stage of a trial.

While the proposition does exist that the State may introduce, for the charged crime, a separate instance of identical conduct by the defendant, it should only be considered when the record reflects that there is uncertainty as to the exact date on which the State is relying for conviction. Obviously this was not the case here. It's amazing how easily the trial court and the

---

**1.** *Sledge v. State,* 953 S.W.2d 253 (Tex.Crim. App.1997) and *Rankin v. State,* 953 S.W.2d 740 (Tex.Crim.App.1996)

Court of Appeals bought into the State's request to avoid the Rule 404(b) prohibition. It seems apparent that the prosecution introduced the testimony herein to overwhelm the defendant with allegations that it had no ability or desire to adequately prove. Its proposed remedy of allowing an election was a disingenuous gesture which had no real effect in curing the extremely prejudicial testimony erroneously allowed in. Unfortunately, in the whole process, the majority has now adopted this proposition and, as a consequence, has literally rendered meaningless the protections and methodologies of Rule 404.

Rule 404(b) embodies the fundamental concept of our criminal justice system that an accused may be tried only for the charged offense and not his criminal propensities. Thus, the Rule sets out the procedure for the use of extraneous offense evidence in limited situations. If the State intends to introduce evidence of other crimes, wrongs, or acts, then the defendant must be provided reasonable pretrial notice.[2] This notice allows the defendant time to prepare a defense against the allegations. Additionally, limiting instructions given in accordance with Rule 404 explain how the jury may or may not consider the evidence. A defendant is entitled to an instruction limiting the jury's use of an extraneous offense for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The jury should be told, both at the time the evidence is admitted and in the jury charge, that the extraneous offense evidence should not be used to prove the character of a person in order to show conformity therewith.

In its haste to nearly repeal the Rule, the majority has also overlooked other protections which are normally afforded to each defendant. These protections include the right to only be held for trial and eventually convicted, either by plea or by trial, based upon the indictment handed up by a grand jury. The majority also disregards the usual requirements for the sufficiency of the evidence offered and what is necessary for its introduction and review on appeal.

The Texas Constitution Article I § 10 and Texas Code of Criminal Procedure Article 1.05 require a grand jury indictment in order for a defendant to be convicted. The indictment serves both to provide pretrial notice to the defendant and to delineate the elements of the offense that the State must prove. In this case, for the offense of delivery of a controlled substance to a child, the State must prove that the defendant acted knowingly, that he delivered or transferred the substance, that the substance was a controlled substance, and that the person to whom it was delivered was a child. The grand jury will not indict unless sufficient probable cause exists and there is enough evidence to formally charge a person with an offense. Thus, for this type of crime, the testimony of K.R. that appellant gave her cocaine on 20 or 30 occasions would not alone be sufficient to obtain a grand jury indictment. For the offense that was alleged in the indictment, occurring on or about September 9th, there was the additional evidence of K.R.'s positive urine test for cocaine, which proved the controlled substance element of the offense and provided the probable cause necessary to indict.

**2.** Notice is required under Rule 404(b) when the State intends to introduce extraneous offense evidence in its case-in-chief. In this case, however, the testimony regarding extraneous offenses was used as rebuttal to the defense argument that other family members may have provided K.R. with cocaine on the occasion alleged in the indictment.

Even though our caselaw has given the State latitude in presenting evidence, it is not intended to provide a way of introducing evidence concerning offenses for which it would not otherwise independently be able to seek a conviction. When introducing evidence, there must be more than a mere allegation that the offense occurred within the statutory time frame. The State is still required to provide sufficient evidence to support a conviction. In other words, the State must provide enough proof to satisfy the allegations of the indictment. K.R.'s testimony that her father delivered cocaine to her on 20 or 30 occasions would not pass a sufficiency test for a motion for directed verdict or a sufficiency review on appeal. This statement by the victim comes nowhere close to proving the essential elements of the case, and thus would be insufficient to support a conviction. The only evidence that the State presented was K.R.'s vague testimony that appellant provided her with cocaine "maybe 20 or 30 times." However, the State did not provide any evidence to corroborate the statement and there was no proof that the substance that K.R. said she received from appellant on those occasions was even cocaine. In order to satisfy its burden of proof for this type of crime, the State would be required to introduce testimony identifying the substance that appellant delivered to K.R. as a controlled substance. The majority's holding allows the State to allege offenses subsumed in the indictment without offering any proof to support the allegations. This now sets a much lower standard for evidence sufficient to convict someone of a crime.

If evidence that the State seeks to introduce constitutes evidence of another crime, wrong or act, its admissibility is governed by Rule 404. This is so for offenses that happen only once as well as for offenses that take place over the course of several years. In the absence of proof to support the allegation that specific acts occurred that would fall under the indictment, the offenses were extraneous and the admissibility of the testimony should be governed by Rule 404.

COCHRAN, J., filed a dissenting opinion in which MEYERS, PRICE and JOHNSON, JJ., joined.

I join in the majority's disposition of Ground Two, but I respectfully dissent to the Court's holding on appellant's first ground for review.[1] I conclude that a portion of the disputed evidence was properly admissible as an extraneous offense under Rule 404(b) to rebut defensive theories, but I disagree that evidence of the repeated commission of the same offense within the statute of limitations is automatically admissible despite Rule 404's general bar against character evidence.

I.

Appellant was charged with delivery of cocaine to his daughter, K.R., on September 9, 1998. The fourteen-year-old K.R., who described herself as "rebellious," testified that she loved her father very much, in part because he let her do what she wanted. She testified that on September 9th, she was visiting her best friend, Jennifer, at the beauty shop where Jennifer's mother worked, when appellant arrived and whispered in K.R.'s ear that "he had

---

1. Appellant's first ground for review reads: Where the indictment on its face alleges only one (1) occurrence of delivery of a controlled substance, does *Sledge v. State*, 953 S.W.2d 253 (1997), allow the introduction of 20 to 30 prior controlled substance

deliveries to the same person under the theory that the deliveries are actually part of the charged offense, and thereby evade the provisions of Rules 404(b) and 403, Texas Rules of Evidence?

some, and I knew what that was." K.R. went with appellant to her paternal grandmother's house where her father lived. They went to appellant's room and he "broke up" "a 20"[2] of cocaine into lines with a razor blade. He then gave K.R. four dollar bills, one of which she used to "snort" the cocaine into her nose. She went back to the beauty salon about ten minutes later and then went home.

Unfortunately, K.R.'s mother wanted to borrow some money for gas, so K.R., without thinking, gave her the dollar bill that she had used to "snort" her father's cocaine. K.R.'s mother soon recognized the prior use to which the dollar bill had been put and confronted K.R., accusing K.R.'s friend, Jennifer, and Jennifer's mother of supplying the cocaine. K.R.'s mother wanted to press charges against Jennifer and her mother, and K.R. was driven down to the police station where she promptly told the police that her father, not Jennifer and her mother, was the source of the cocaine. The next day K.R.'s urine tested positive for cocaine residue.

On cross-examination, appellant's lawyer raised two different defensive theories. First, to undermine the State's claim that appellant had supplied K.R. with cocaine, defense counsel showed that K.R. had partaken of drugs with numerous other relatives. Second, to show that K.R. had a motive to falsely accuse her father, defense counsel suggested that K.R.'s mother resented appellant because he failed to pay child support.

The prosecutor then asked the trial court to allow him to offer K.R.'s testimony, that appellant had given her cocaine some "20 to 30" times before, and to present testimony from K.R.'s friend, Valerie,

who had been present and seen appellant provide cocaine to K.R. on a previous occasion. The State originally offered what it called "extraneous offenses" as "rebuttal of the defense's theory." The trial court expressed some concern about admitting this evidence, but agreed to accept briefs from the State and defense before making a final ruling the following morning.

The next day, the trial judge announced that he would admit the State's proffered evidence because:

> according to the case law that I have reviewed and have been provided to me—that those occasions are within the three-year statute of limitations; and therefore are offenses that are described in the indictment.
>
> In the alternative, I do not believe I have to go to the balancing portion of 404(b) regarding extraneous offenses. However, if I do, I believe that it is a rebuttal of a defensive theory. It goes to identity, opportunity, possibly even motive. And therefore, if it were to be within the Court's discretion under 404(b), I would allow it there, also.
>
> As to the testimony of Valerie [ ], I am—I will rule that because I have ruled that the testimony of [K.R.] is within the indictment and the charge in the—the charges against the defendant as described in the indictment, that I will allow her to testify as a witness to the crimes as described in the indictment. However, I am not going to allow any testimony as to what I think is clearly an extraneous offense of the alleged supplying of cocaine to her as a minor on an unindicted offense.[3]

---

**2.** K.R. testified that "a 20" is a packet of cocaine worth $20.

**3.** According to the State's proffer, Valerie would have testified that appellant supplied her, Valerie, with cocaine at the same time he supplied cocaine to K.R.

Appellant objected under Rules 403 and 404, and added "that this alleged additional incident is not part of the original indictment and should not be considered for this particular case."

Thereafter, K.R. testified that she began receiving cocaine from appellant in January 1998, and continued to do so some "20 to 30 times" through September 9, 1998. She described how these situations generally occurred, but she was unable to remember any of the dates or times. At one point the State, over objection, asked K R. if her father "ever explain[ed] to you a different manner in which you might ingest it or take it in, other than snorting it?" The trial court overruled appellant's objection, and K.R. responded: "He—he shoots—he shoots up. And he told me it was a better rush doing it that way and that—it was better doing it that way, that you really—it was a better rush than doing it through your nose." And so forth.

Valerie then testified that one time she and K.R. had gone with appellant to a "shack" behind appellant's mother's house where appellant pulled out a plastic bag of cocaine, emptied it on a table, and made rails of cocaine, which K.R. then "snorted."

The State began its closing argument with the following:

If it pleases the Court, [defense counsel], and ladies and gentlemen. When we began this case we discussed pushing the envelope a little bit. And we discussed that it would be pushing the envelope a little bit in regards to the law, but also in regards to decency.

And what is decency in this case? Decency in this case is certainly not allowing your child, much less giving your child, on 20 to 30 occasions in a nine-month period of time, cocaine....

. . .

But in regard to the definitions on Page 1, the term "on or about," as we discussed a bit during voir dire—and everybody agreed in taking their oath that they would give us a true answer at that time. We understood y'all—each and every one of you to not necessarily have a problem or a gut problem with the fact that a charge could include anything prior to the indictment, but within the statute of limitations.

And even though the State alleged one particular date, I think that there is sufficient evidence certainly to prove that that was, in fact, the date that Kelly ingested cocaine. Because the very next day, on the 10th, there was urine submitted that tested positive for cocaine. So we know she ingested it probably within 42 to 72 hours, from the evidence, prior to that time.

But on or about, in fact, means—it allows you to consider any and all of the testimony that you heard basically from January of '98 through September 9th of '98 to convict this defendant of delivery of cocaine not only to a minor, but a minor that is his own child.

Thus, the prosecutor explicitly asked the jury to consider the evidence of the other "20 to 30" times K.R. said appellant had given her cocaine to prove that he had given her cocaine on September 9th. This looks a lot like forbidden propensity evidence, with the jury asked to find appellant guilty for giving K.R. cocaine on September 9th because he was a "bad" father who had given her cocaine on 20 to 30 other occasions.

Based upon this evidence, the jury convicted appellant and, finding an enhancement paragraph true, sentenced him to sixty years imprisonment and a $10,000 fine.

## II.

On appeal, appellant asserted, *inter alia*, that the trial court erred in admitting K.R.'s testimony concerning the "20 to 30" times appellant had previously supplied her with cocaine, as well as Valerie's testimony concerning the previous occasion in which she had witnessed appellant give K.R. cocaine. He asserted that this testimony was evidence of extraneous offenses barred by Rule 404(b).

The court of appeals held that:

An extraneous offense is an act of misconduct that is not shown in the charging instrument. *See Rankin v. State*, 953 S.W.2d 740, 741 (Tex.Crim. App.1996). The indictment in this cause alleged that appellant delivered cocaine to K.R. "on or about" September 9, 1998. When the indictment alleges that a crime occurred on or about a particular date, the State may present evidence of the offense being committed at any time prior to the filing of the indictment and within the limitations period. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997). The testimony of which Rodriguez complains was not evidence of extraneous offenses, but rather evidence of the repeated commission of the offense alleged in the indictment. Rodriguez was entitled to require the State to elect the occurrence on which it sought to rely for conviction, but in the absence of a request for an election there was no error in admitting the challenged testimony. *See Worley v. State*, 870 S.W.2d 620, 622–23 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *see also Crawford v. State*, 696 S.W.2d 903, 905–07 (Tex.Crim.App.1985).

A majority of this Court concludes that "[t]he Court of Appeals applied well-settled law set out in our decisions in *Rankin* and *Sledge* and we are not inclined to revisit those decisions." [4] Both *Rankin* and *Sledge* were 5–4 opinions with multiple concurring or dissenting opinions in each; they are not exactly *terra firma*. Nonetheless, I too am not inclined to revisit those decisions. I do not think, however, that they stand for the proposition that the State may introduce any and all evidence of the defendant's repeated commission of the same offense within the statute of limitations to prove he committed the charged offense.

What do *Rankin* and *Sledge* stand for? In *Rankin*, the defendant was charged with possession of a rock of cocaine which a police officer found in his patrol car where the defendant had been sitting. [5] The defendant testified that he had indeed possessed a rock of crack cocaine earlier in the day, but that the rock found in the patrol car was not his. [6] This Court, quite understandably, held that the defendant's judicial admission that he had possessed a *different* rock of crack cocaine on the same day was not a defense to the charged offense, nor was it an extraneous offense. [7] The indictment alleged that the defendant possessed cocaine on a particular date and the defendant testified that he did indeed do so on that date. The pertinent legal issue is not whether the defendant possessed Rock A or Rock B; the gravamen of the offense is whether the defendant possessed *any* cocaine of the particular date. Possession of Rock B is not a defense to the possession of Rock A.

---

4. *Ante,* op. at 91.

5. 953 S.W.2d at 741.

6. *Id.*

7. *Id.* ("Appellant's confession that he possessed a rock of crack cocaine earlier that morning is an act that is clearly 'shown in the charging papers'").

In *Sledge*, the defendant was charged with aggravated sexual assault and indecency with a child on a particular date.[8] At a pre-trial hearing, the State told the court that the defendant's conduct had been continuous over several years. The defendant asked the State to elect the specific instances on which it would proceed.[9] The State accommodated and graphically described the two specific instances upon which it would rely, even though these particular instances did not occur on the precise date set out in the indictment.[10] The trial judge, noting that the defendant had not had sufficient notice of those particular incidents, granted the defense a continuance "to prepare a defense based on the designated offenses."[11] At trial, the prosecution presented evidence of only those two instances which, as it had acknowledged pre-trial, did not occur on the date set out in the indictment. They had, however, occurred within the statute of limitations, had been graphically specified for the defendant before trial, and they were events for which the defendant was given additional time to prepare. The defendant complained on appeal that the evidence was legally insufficient because the State failed to prove that the specific offenses occurred on the date alleged in the indictment.[12] These incidents were, according to the defendant, unindicted and extraneous offenses because they occurred a year or more before the

charged date.[13] No, no, said this Court; the State alleged two specific acts in the indictment, and the State proved two specific acts which conformed to those described in the indictment, and there was "no reason to believe that the offenses presented to the grand jury were different from the offenses proven at trial."[14]

I cannot understand how the result and reasoning in *Rankin* and *Sledge* inexorably lead to today's holding that any and all evidence of the repeated commission of the charged offense is admissible to prove the charged offense. Does *Rankin* really stand for the proposition that the State could have offered evidence of *any* rocks of cocaine that the defendant had ever possessed within the statute of limitations to prove that he had possessed the rock of cocaine left in the patrol car on March 8, 1992? Does *Sledge* really stand for the proposition that the State could have offered any and all evidence of the defendant's prior molestations of the child to prove that he molested her on the charged occasion? Certainly the State did not do so in those cases. Nor did this Court ever suggest in those opinions that its reasoning or result should lead to the admission of all offenses that occur within the statute of limitations, as long as they are the repeated commission of the charged offense.

Invoking the spirit of our predecessors, "Color me amazed."[15] Neither *Rankin*

---

8. 953 S.W.2d at 254.

9. *Id.*

10. *Id.* The State explained that it had chosen these two instances, which admittedly occurred much earlier than the date in the indictment, because those incidents were most clear in the child's mind. *Id.* The State further explained that it had alleged the particular date specified in the indictment simply because that was the last date on which the child had been in contact with the defendant. *Id.*

11. *Id.* at 255.

12. *Id.* at 255.

13. *Id.*

14. *Id.* at 256.

15. *See Aldrighetti v. State,* 507 S.W.2d 770, 775 (Tex.Crim.App.1974) (Onion, P.J., dissenting) ("Color me amazed"); *Antunez v. State,* 647 S.W.2d 649, 651 (Tex.Crim.App. 1983) (Onion, P.J., dissenting) ("Color me

nor *Sledge* deal with the relevancy or admissibility of evidence. Those cases concerned the sufficiency of properly-admitted evidence to prove the specific allegations in the indictment.

I do not know whether the State or the defense will benefit the most from the Court's holding in this case,[16] but both the law and policy concerning the admissibility

of extraneous offenses have suffered a grievous blow.

### III.

The principle that a man may not be convicted of *this* crime because he has committed the same or similar crimes in the past has been a bedrock principle of the Anglo–American system of justice for centuries.[17] Of course, it is equally well

amazed again, this time with a shade of deep concern"); *King v. State*, 687 S.W.2d 762, 767 (Tex.Crim.App.1985) (Teague, J., dissenting) (" 'Color me not only amazed, but do it in chartreuse' ").

**16.** The bad news for defendants is that the State may now offer any and all evidence of the prior (or subsequent) repeated commission of the charged offense to show that the defendant committed the charged offense.

The bad news for the State is that the defendant will "take a bath" on all prior (or subsequent) offenses that are introduced at trial unless the defendant asks the State to elect which specific instance it wishes to proceed on. Henceforth, double jeopardy will attach to any and all offenses that are introduced at trial which meet the requirements of the indictment. *See ante*, op. at 91 ("[t]he benefit a defendant receives in cases like this is that, absent an election, he cannot later be prosecuted for the separate acts of misconduct upon which the jury could have convicted the defendant"). That, too, is a novel development. Perhaps Mr. Rankin had it right: if it looks like the State has solid proof of the charged offense, the defendant should take the witness stand, confess to every similar offense he has committed within the statute of limitations, and respectfully decline to request any election. This is truly an extraordinary result. Suppose that a defendant is charged with robbing the same bank teller on Monday, Tuesday, Wednesday and Friday. If the State offers evidence of the Tuesday bank robbery to prove that the defendant was the robber on Monday, then double jeopardy will attach to the Tuesday robbery because it fits within the statute of limitations. And, if the Tuesday robbery comes in through the State, the defendant might as well offer evidence of the Wednesday and Friday bank robberies to prevent the State from prosecuting him on those separate offenses.

**17.** *See generally*, McCormick's Handbook of the Law of Evidence § 185, at 435–38 (Edward W. Cleary, ed., 2d ed.1972); 1 John H. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law, §§ 55–68a, at 449–91 (3d ed.1940). As one appellate judge has noted: "Our law makes some allowance for the possibility of reform, and does not yet say, 'once a moonshiner, always a moonshiner.' " *Baker v. United States*, 227 F.2d 376, 378–79 (5th Cir.1955) (Rives, J., concurring). The rationale for exclusion was best expressed by Justice Jackson:

The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defendant against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (footnotes omitted); *see also Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). In *Crank*, this Court stated:

The accused is entitled to be tried on the accusation made in the state's pleading and he should not be tried for some collateral crime nor for being a criminal generally. Evidence showing the commission of an extraneous offense is usually excluded not because it is without legal relevance, but because such evidence is inherently prejudi-

established that this same evidence of prior crimes or bad acts *may* be admissible *if* relevant for some purpose other than character conformity or propensity.[18] The key to admissibility is the proponent's explanation of precisely how the proffered evidence is probative of a fact of consequence.[19] In this case, the State and the trial judge articulated two bases for admitting the evidence of appellant's prior acts of supplying K.R. with cocaine: 1) appellant's acts occurred within the statute of limitations, and therefore they are *ipso facto* admissible because they are the repeated commission of the charged offense; and 2) these acts were admissible to rebut a defensive theory. I am unaware of any doctrine that makes evidence of the repeated commission of the charged offense admissible under Rule 404 simply because

it occurred within the statute of limitations.

In this case, however, the defense did raise issues concerning both the identity of the person who supplied K.R. with cocaine and whether K.R.'s mother (and hence K.R.) had a motive to falsely accuse appellant of such conduct. These are both legitimate purposes to admit evidence of prior bad acts under Rule 404(b).[20] Testimony by an independent witness, Valerie, concerning a single prior occasion, in which appellant supplied cocaine to his daughter in precisely the same way that he purportedly gave her cocaine on the charged occasion, is some proof of appellant's identity as the person who supplied her with cocaine on September 9th, and that same evidence tends to rebut appellant's defensive theory that K.R.'s testimony was fabricated because her mother was angry at

cial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. Before evidence of collateral crimes is admissible, a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown.

*Id.* For the first time ever, this Court holds that any act which is covered by the wording of the indictment is not a collateral crime and that therefore the State need not show any "relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged." Thus, courts need not now concern themselves with the relevance, inherent prejudice or confusion of issues that such evidence entails, or whether the defendant was notified that any other acts fitting the specifications of the indictment would be introduced against him. And, since these acts are no longer categorized as extraneous offenses under Rule 404(b), the State need not notify the defendant that it intends to offer them at trial.

**18.** *See generally* TEX.R. EVID. 404(b). In *Rankin v. State,* 974 S.W.2d 707, 709 (Tex.Crim. App.1996), this Court stated: "if evidence 1)

is introduced for a purpose other than character conformity, 2) has relevance to a 'fact of consequence' in the case and 3) remains free of any other constitutional or statutory prohibitions, it is admissible."

**19.** *Rankin,* 974 S.W.2d at 709.

**20.** TEX.R. EVID. 404(b) (evidence of other crimes, wrongs or acts may be admissible as proof of motive or identity); *see, e.g., Castillo v. State,* 739 S.W.2d 280, 290 (Tex.Crim.App. 1987) (evidence of a second aggravated robbery committed by the defendant was admissible to show defendant's identity as robber-murderer on charged occasion); *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App. 1996) (identity may become a disputed issue by cross-examining State's witnesses); *Wheeler v. State,* 67 S.W.3d 879, 886–87 & n. 18 (Tex.Crim.App.2002) (noting that "[e]vidence of extraneous offenses committed by the accused has been held admissible . . . to refute a defensive theory raised by the accused") (quoting *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972); *see also Crank,* 761 S.W.2d at 341 ("[p]robably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory").

appellant. Therefore, I conclude that the trial court did not abuse its discretion in admitting evidence of this one extraneous offense to rebut the defensive theories. I can find no such legitimate purpose in admitting K.R.'s testimony concerning the other "20 to 30" times that appellant gave her cocaine.

Therefore, I respectfully dissent and would reverse and remand this case to the court of appeals to conduct a harm analysis for the improper admission of K.R.'s testimony concerning the "20 to 30" times appellant had previously given her cocaine.

MEYERS, J., filed this statement dissenting to the denial of appellant's motion for rehearing, in which PRICE, JOHNSON, and COCHRAN, J.J., joined.

Our Court receives a number of motions for rehearing on the cases that we decide every year. Some of these motions have merit, many do not. In this particular case, the appellant's attorney has presented us with a well composed request that not only reveals the inaccuracies that are apparent in the majority opinion,[1] but also points out how future criminal defendants may now have to confront unindicted allegations. I do not know how criminal defense attorneys will prepare for trial without knowing the actual number of crimes that they may possibly face. (Remember, 404(b) is not in play anymore.)

An enterprising prosecutor can now simply place into evidence testimony of similar instances of misconduct by the defendant without seeking an indictment, following the rules of evidence, or worrying about the necessity of proof, to say nothing of meeting the prohibitions of Rule 404(b). The propensity for abuse is rife, particularly in the context of rebuttal evidence [2] and closing arguments.

The problems wrought by the majority opinion are articulated in the following passages from appellant's motion for rehearing:

> Could Petitioner now seek to bar any and all charges between the date stated in the indictment and the running of the statute of limitations on the basis that they could have been included in the charged offense? If no, why not? If the 20 or 30 other deliveries in the 9 months proceeding [sic] the indictment were sufficiently plead under art. 21.03 and art. 21.04 Texas Code of Criminal Procedure, why could it not be argued that another 50 deliveries in the year preceding the 20–30 already included deliveries were likewise sufficiently plead under art. 21.03, art. 21.04, and are thus jeopardy barred? Further, is the Court saying any trial absolves a defendant of all prior instances of the commission of that particular offense?
>
> . . . .
>
> This is the most difficult part of the opinion to understand. How can a question of relevancy or admissibility of evidence be ignored in favor of forcing the State to elect which of twenty or thirty offenses are included in the charge? If the State makes such an election, do the

---

1. Judge Cochran's dissenting opinion ably reveals how the majority's reliance on *Sledge* and *Rankin* is incorrect.

2. This is what happened to the defendant here. The State was content to go to trial on one instance of delivery until it decided it was necessary to pull out 20–30 more allegations after defense cross-examination of the child. Remember, these allegations came in without dates, times, or scientific evidence. The only temperance was a reference to the statute of limitations, but remember that statute of limitations is a defense now and the defendant must show that the alleged crime is barred. *See Proctor v. State,* 967 S.W.2d 840 (Tex. Crim.App.1998); *Lemell v. State,* 915 S.W.2d 486 (Tex.Crim.App.1995).

20 or 30 offenses now become extraneous offenses? If so, what does the defendant do about that very big skunk in the jury box? Ask for a belated and ineffective jury instruction? Ask for a mistrial because no instruction could possibly be of any effect? If the State does not elect, is the defense entitled to 30 separate guilt/innocence questions?

. . . .

Is the majority saying that if an accused takes the stand and denies the charged offense but admits to a similar offense many months, or even years, prior, that the conviction will stand even if the prosecutor and the grand jury had no clue of the commission of that crime? If so, does not this ruling have a chilling effect on a defendant's substantial rights and all but preclude many defendants from testifying? Perhaps it is only the undersigned counsel's clientele, but few defendants charged with felony drug possession could honestly deny drug possession in their past, even though they could deny it for the incident in question and maybe be [sic] in the past days, weeks, months or year. Moreover, can a defense lawyer ever allow a client to testify in court as to his innocence of the charged offense if he will only have to admit complicity in another incident far removed from the charged offense? (footnote omitted).

Further, if the State is allowed to hide 20 to 30 controlled substance deliveries behind an indictment that, on its face, only gives notice of one incident of delivery of a controlled substance, many other issues arise. First, this ruling all but encourages, if not sanctions, trial by ambush. Secondly, it will be fairly difficult to prepare a defense to charges the indictment fails to provide notice about. One can only picture the difficulty in finding alibi witnesses in between the

time the State lets the hidden charges out of the bag and the time the trial court expects the defendant to put on a defense. Thirdly, it encourages the State in weak cases to make them stronger by only indicting the last incident and overwhelming the defense with specious prior alleged acts for the sake of pure propensity, and then hope that the weight of the heretofor inadmissable evidence wins the day.

. . . .

What else is jeopardy barred? What about a delivery ten months prior to the date stated in the indictment? Is that part of the charged offense? Was that plead with the certainty required to bar a subsequent prosecution? Petitioner asserts that it should not because the indictment in the case on review does not include more than one incident. However, if the "20 or 30 prior deliveries" within the 9 months of the indictment are included in the indictment sufficient to satisfy art. 21.03 and 21.04, Texas Code Criminal Procedure, why would another 50 from a year before the 20 or 30 not likewise be sufficiently plead?

Assume a person is charged in Comal County with felony DWI in two separate incidents. Would it be a shrewd move by the defense to try the second incident first so that the first incident becomes jeopardy barred under the reasoning of the majority opinion? Worse yet, assume a pedophile has sexually abused a severely handicapped child (who cannot testify due to his or her handicap) over the course of several years but only the last incident has a known witness. Does the trial of the last incident bar prosecution for all the prior incidents under the theory that they were all part of the charged offense? Petitioner hopes not, but under the majority opinion, if new

evidence comes to light to prove a prior incident, the defendant could plead a jeopardy bar as it [is] as much of the charged offense as the 20 to 30 prior deliveries were a part of the charged offense in the case on review.

I couldn't have said it better myself. With this, I respectfully dissent to our failure to grant his motion for rehearing.