In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-316 CR


____________________



JOHN DOUGLAS MITCHELL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B040383-R






MEMORANDUM OPINION



 A jury convicted John Douglas Mitchell of aggravated sexual assault of a child and
assessed punishment at ninety-nine years of confinement in the Correctional Institutions
Division of the Texas Department of Criminal Justice and a $10,000 fine. Mitchell raises
nine issues in his brief on appeal. We find no reversible error and affirm the judgment.

 Mitchell's first two issues challenge the legal and factual sufficiency of the evidence
to support his conviction. A legal sufficiency review requires us to view the evidence in the
light most favorable to the verdict and determine whether any rational factfinder could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618,
620 (Tex. Crim. App. 2004). "In a factual sufficiency review, we view all the evidence in
a neutral light, both for and against the finding, and set aside the verdict if 'proof of guilt is
so obviously weak as to undermine confidence in the jury's determination, or the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary proof.'" 
Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (quoting Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

 The jury convicted Mitchell on Count Two of the indictment, which alleged penile
penetration of the sexual organ of a child younger than fourteen (14) years of age on or about
June 1, 2003. The jury acquitted Mitchell on Count One, which alleged penile penetration
of the sexual organ of the same complainant on or about October 26, 2003, and on Count
Three, which alleged indecency by contact with the sexual organ of the same complainant
on or about March 1, 2002. On appeal, Mitchell argues the State failed to prove that he
penetrated the sexual organ of the complainant with his penis on June 1, 2003. The appellant
concedes the complainant, his stepdaughter, testified that Mitchell engaged in sexual acts
with her about three times a week from December 2002 until October 2003. Significant to
the appellant's attack on the sufficiency of the evidence is the State's election, on Mitchell's
motion at the close of the State's case-in-chief, "to go with the date of June 1st, 2003 - - or
on or about June 1st of 2003, as alleged in the indictment." Appellant argues the State failed
to prove he committed the alleged act on that date. Our review of the record, however,
reveals a substantial amount of testimony establishing the date of the offense. 

 During direct examination, the complainant testified as follows:

 Q. Did he touch you on your vagina at this house?


 A. Yes, ma'am.


 Q. Did this happen between the time you were in the sixth grade - - you
started seventh grade in 2003; is that right?


 A. Yes, ma'am.


 Q. Do you remember the summer between sixth grade and seventh grade?


 A. Yeah.


 Q. Okay. Were you living with [Appellant] and your mom out there at this
house on [location]? 


 A. Yes, ma'am.


 Q. And during that summer between June and, I guess, August, did
[Appellant] put his penis into your vagina?


 A. Yes, ma'am.


 Q. On one occasion or more than one occasion?


 A. More than one occasion.


 Q. How did it usually, [Complainant], end up? Did you tell him no every
time, or what happened?


 A. I told him no every time.


 Q. And, so, how was it that he would stop every time?


 A. On the second or third no.


 Q. Every time that's what it took?


 A. Yes, ma'am.


 Q. And then he would stop?


 A. Yes, ma'am.


 During cross-examination by defense counsel, the complainant testified as follows: 


 Q. From December of '02 on, are you saying it happened once a week,
twice a week, three times a month? Can you give me any kind of
indication of how often this - -


 A. Maybe three times a week.


 Q. Three times a week? So, from December of '02 until October of '03,
you're saying [Appellant] had sex with you three times a week?


 A. Like he done something to me three times a week, but not every day he
did it - - he put his penis in just some of the time he did it.


 Q. Sometimes it would be the oral sex, sometimes the intercourse that
you've described?


 A. Yes, sir.



 On re-direct examination, the witness testified as follows:


 Q. [Complainant], who was it back in October 2003, on or about October
26th of 2003, who put his penis into your vagina when you were less
than - - younger than 14 years old? Who did that?


 A. That man right there.


 Q. Back in June of 2003?


 A. That man right there.


 On cross-examination, the complainant testified about the date of the offense, as
follows:

 Q. I don't remember ever - - what - - do you recall this June the 1st
incident, where it happened and what happened?


 A. June the 1st?


 Q. Uh-huh. It's been alleged that on or about June the 1st of 2003 that
[Appellant] had sex with you.


 A. (No response)


 Q. In fact, [Prosecutor] asked you, on June the 1st, 2003, isn't it true that 

 [Appellant] put his penis in your vagina, and you said yes.


 [Prosecutor]: Excuse me. I believe the question was on or about.


 [Defense Counsel]: On or about. I'm sorry.


 [Prosecutor]: That's how I phrased it.


 THE COURT: Sustained.


 [Defense Counsel]: I apologize, Your Honor. I didn't mean to
misstate that.


 [Defense Counsel]:


 Q. On or about June the 1st.


 A. Okay.


 Q. And you said yes. So - - and I don't think we ever heard any specific
incident about that date. Do you recall what happened on or about that
date?


 A. You mean - - you can't - -


 Q. I'm sorry.


 A. You'll have to break it down for me.


 Q. Okay. I'll try. Sometimes I don't understand my own questions. In - -
one of the charges is that on or about June the 1st, 2003, [Appellant]
had intercourse with you. 


 A. Okay. 


 Q. What I'm asking is can you tell us about this particular time, where it
happened, what happened, all of the - - like you have about the October
- - 


 A. Okay.


 Q. - - and the Florida trip?


 A. It happened in the bungalow where it always happened, and - - like - -
I can't like remember where we were, but I remember what happened.


 Q. I guess more directly what is it about the date June the 1st that rings
some kind of bell with you about something happening about that time?


 A. Just - - it's just there.


 Q. So, you don't really have any independent memory of June the 1st of
2003 or thereabouts?


 A. Somewhere around there where it happened. 


 [Prosecutor]: Your Honor, if she could just understand what on or about
means. It doesn't necessarily mean on that specific day June 1st, but around
that time, I think that might - - I think that's where she's maybe confused.


 THE COURT: Okay. It's cross. You can proceed, [Defense Counsel].


 BY [Defense Counsel]:


 Q. So - - I mean, are you - - and it might be me being stupid. Somebody
picked this date that something happened on or about June the 1st,
sometimes around there. Did you pick this date? Did someone just
pick it out of the air and say something must have happened about that
time, or do you know?


 A. I said it.


 Q. You said June the 1st?


 A. I said somewhere around there.


 Q. Well, but, I mean, you've told this happened three times a week for
almost a year. What was different about around June the 1st from June
the 15th or August the 3rd or any other date?


 A. Because I know some dates. I know some days. I know when some
stuff happened. This isn't like what you would keep. This ain't like
what you would want to keep on like a day. So, I didn't keep the dates.


 Q. I understand, [Complainant], but - - and it may not be your doing, but
somebody has made a real serious allegation that happened on or about
that day, and I'm trying to find out what was it about June the 1st that's
in your memory. You've been - - you've told us, you know, the stuff
about the Halloween and the Florida trip and all that's good, but this
one is just kind of out there with no description about specifically what
happened.


 A. Well - -


 Q. Are you just guessing that something happened on June - - on or about
June the 1st?


 A. Something happened around there.


 Q. You're just guessing?


 A. Like around the first of June.


 Q. Okay. And it was one of the numerous incidences. It was just like all
the others? Is that what you're saying? It happened in the middle of
the night at the bungalow, the way you've already described that?


 A. Yes, sir.


 Finally, the State questioned the complainant on re-direct, as follows:


 Q. Just talking about June of 2003, what - - had you just finished school
when June of 2003 came around?


 A. Yes, ma'am.


 Q. Do you remember what grade it was that you finished?


 A. Sixth.


 Q. And you were going to start seventh grade in the fall of 2003; is that
right?


 A. Yes, ma'am.


 Q. Did [Appellant] have sex with you in June of 2003?


 A. Yes, Ma'am. 


 Mitchell contends this election required the State to prove that he penetrated the
complainant's sexual organ with his penis on June 1, 2003. The victim testified that the
appellant had vaginal intercourse with her on more than one occasion in the summer between
her sixth and seventh grade years, and that the first of those occasions was around June 1,
2003. The State's election to rely on the act "on or about June 1st of 2003, as alleged in the
indictment" simply narrowed the jury's consideration of the evidence upon which it could
reach a verdict of guilt on Count Two. Viewed in a light most favorable to the prosecution,
we hold that the evidence is sufficient to permit a rational jury to unanimously find Mitchell
guilty beyond a reasonable doubt as alleged in the second count of the indictment.

 Appellant argues the evidence is factually insufficient because the State produced no
expert testimony to show the complainant experienced an extended period of sexual abuse
and the prosecutor asked leading questions. One of Mitchell's biological children testified
that she lived with the family for a while and that in her opinion the complainant was not
truthful and was prone to fantasize. According to this witness, the complainant would try to
move to the complainant's father's home in order to escape punishment for her misbehavior.
Without corroborating evidence, Mitchell argues, the complainant's testimony is no stronger
than his denial.

 We note that corroboration is not required for a conviction for aggravated sexual
assault on a child under section 22.021 of the Penal Code. See Tex. Code Crim. Proc. Ann.
art. 38.07 (Vernon 2005). Furthermore, the jury is the exclusive judge of the facts proved,
and of the weight to be given to the testimony. Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979). In this case, neither the manner in which the prosecutor questioned the
complaining witness nor the negative testimony about the complainant's character weaken
the reliability of the witness's testimony to the point of undermining our confidence in the
jury's verdict. We hold the evidence is legally and factually sufficient. Issues one and two
are overruled.

 Appellant's next three issues raise a claim of guilt phase ineffective assistance of
counsel. The trial court conducted an evidentiary hearing on the motion for new trial, for
which the appellant obtained new counsel. The trial court denied the motion for new trial
after hearing the testimony of the two attorneys who represented Mitchell at trial. On appeal,
Mitchell contends trial counsel failed to adequately investigate the facts, failed to secure the
timely appearance of material witnesses, failed to object to the State's improper election of
the specific act relied on for conviction, failed to object to an improper jury instruction, and
failed to obtain written notice of extraneous offenses or to request a mid-trial limiting
instruction on their use.

 To establish ineffective assistance of counsel, the appellant must demonstrate that
counsel's performance was deficient and that counsel's performance prejudiced his defense
at trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984); Ex parte Varelas, 45 S.W.3d 627, 629 (Tex. Crim. App. 2001). Our review is highly
deferential and presumes that counsel's actions fell within the wide range of reasonable and
professional assistance. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To
establish deficient performance, the appellant must show that counsel's performance fell
below an objective standard of reasonableness under prevailing professional norms, as
judged on the facts of a particular case at the time of counsel's conduct. Strickland, 466 U.S.
at 687-88, 690; Varelas, 45 S.W.3d at 629. Rather than examining isolated acts or omissions
of trial counsel, the totality of the representation must be considered. Scheanette v. State 144
S.W.3d 503, 509 (Tex. Crim. App. 2004), cert. denied, 543 U.S. 1059, 125 S.Ct. 872, 160
L.Ed.2d 785 (2005). To establish prejudice, the appellant must show that there is a
reasonable probability, sufficient to undermine confidence in the outcome, that but for the
errors made by counsel, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694; Varelas, 45 S.W.3d at 629. "Allegations of ineffectiveness must
be firmly founded in the record as counsel is presumed to have rendered adequate assistance
and made all significant decisions in the exercise of reasonable professional judgment." 
Howard v. State, 153 S.W.3d 382, 388 (Tex. Crim. App. 2004), cert. denied, ___ U.S. ___,
126 S.Ct.1429, 164 L.Ed.2d 132 (2006).

 Appellant contends lead counsel was ineffective because he failed to interview the
complainant and three other State's witnesses. Counsel's duty to investigate is not
categorical; rather, he must make reasonable investigations. McFarland v. State, 928 S.W.2d
482, 501 (Tex. Crim. App. 1996). A decision not to investigate is assessed for
reasonableness under all the circumstances and counsel's judgment is entitled to deference.
Id. Mitchell's trial lawyer testified that Orange County has an "open-file policy," and each
of his lawyers stated that he reviewed the State's file. They also conducted personal
interviews of some of the witnesses and several potential witnesses. There is no indication
in the record that any of the State's witnesses they failed to interview, three of whom were
children, were willing to communicate with trial counsel.

 Mitchell also complains that trial counsel's failure to subpoena a witness named
Lowell Frederick to testify in the trial's guilt phase was not an objectively reasonable trial
strategy. Trial counsel indicated the decision not to call Frederick was a strategic one based
in part on a statement Frederick gave the police and on counsel's personal acquaintance with
this witness. The defense did call Frederick as a witness in the punishment phase, at the
behest of Mitchell and his family. Frederick contradicted another witness's story about 
having seen two young girls in towels with the appellant, but the State effectively rebutted
Frederick's testimony by showing he did not testify truthfully about having been contacted
by authorities and having refused to give a statement.

 Next, Mitchell complains that trial counsel should have called Constable Parker
Thompson to impeach the complainant's testimony with evidence of a shoplifting incident
in which Constable Thompson discovered the child had initially been untruthful. Trial
counsel stated that failing to call the constable was a strategic decision based upon his
investigation, which revealed that the witness would have provided negative testimony.
Furthermore, the testimony provided by Constable Parker in the motion for new trial hearing
did not establish that the witness would have provided admissible character or impeachment
evidence had he testified at trial. See Tex. R. Evid. 608, 609.

 The appellant also complains that trial counsel should have objected to the manner in
which the State elected the specific act of sexual misconduct upon which a conviction would
be sought under Count Two of the indictment. In support of his argument that an objection
was required, Mitchell cites cases in which the trial court denied the defendant's request for
an election. See O'Neal v. State, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988); Dixon v.
State, 171 S.W.3d 432, 435 (Tex. App.--Houston [14th Dist.] 2005), rev'd, No. PD-1576-05,
2006 WL 2620130 (Tex. Crim. App. Sept. 13, 2006); Farr v. State, 140 S.W.3d 895, 900-01
(Tex. App.--Houston [14th Dist.] 2004), aff'd sub nom., Phillips v. State, 193 S.W.3d 904
(Tex. Crim. App. 2006). In this case, counsel requested and obtained an election, which the
appellant contends did not sufficiently identify the act for which the State would seek a
conviction. The testimony set forth in our discussion of the sufficiency of the evidence
demonstrates that the State sufficiently identified the specific act that was the subject of its
election. None of the cases cited by the appellant stand for the proposition that the State
must elect one specific date on which the offense occurred and then prove that the offense
occurred on that date.

 In a related complaint, Mitchell contends trial counsel provided deficient performance
because the defense failed to object to a jury instruction explaining the meaning of the "on
or about" language in the jury charge. According to the appellant, the failure to limit the
charge to a single date effectively nullified the State's election. We disagree with the basic
premise of this argument. General statements of repeat occurrences of an offense are not
extraneous offenses, but are evidence of the charged offense and may support a conviction
under Jackson v. Virginia. See Rodriguez v. State, 104 S.W.3d 87, 90-91 (Tex. Crim. App.
2003). "[T]he 'on or about' language of an indictment allows the State to prove a date other
than the one alleged in the indictment as long as the date is anterior to the presentment of the
indictment and within the statutory limitation period." Sledge v. State, 953 S.W.2d 253, 256
(Tex. Crim. App. 1997). The defendant may require the State to elect which of several acts
proved at trial it will rely upon for a conviction. O'Neal, 746 S.W.2d at 771. That election
requires the State to rely upon a single act, but that does not mean that the State must prove
the act on which it relies occurred on any specific date. In this case, the complainant testified
that the appellant committed the act described in Count Two of the indictment on multiple
occasions, and that one of those occasions happened sometime around June 1, 2003. The
evidence and the State's election are sufficiently specific to ensure a unanimous verdict. Cf.
Francis v. State 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (disjunctive submission of two
acts of indecency with a child allowed a conviction on less than a unanimous verdict).

 Next, Mitchell claims counsel performed deficiently because the defense did not
obtain written notice of the State's intent to offer evidence of extraneous crimes and prior
convictions. One of Mitchell's trial attorneys testified that he did not file a request for notice
of extraneous offenses. Nonetheless, such a request for notice, filed by co-counsel, does
appear in the record. Mitchell also contends trial counsel was ineffective in failing to request
a mid-trial limiting instruction on the use of the extraneous offenses. The trial court is not
required to order an election until the State closes its case-in-chief. See O'Neal, 746 S.W.2d
at 771-72. Therefore, the extraneous nature of the offenses may not have been established
at the time of their admission. See generally Rodriguez, 104 S.W.3d at 91. The trial court
gave a limiting instruction in the charge, after the State made its election.

 In support of his claim that deficient performance by trial counsel prejudiced the
defense of his case, Mitchell argues that the failure to call material witnesses and to
adequately limit the use of extraneous acts deprived the jury of the ability to fully assess the
credibility of the complainant. The evidence adduced in the course of the motion for new
trial hearing did not seriously call into question the credibility of the State's witnesses or the
truth and accuracy of their testimony at trial. Nor does the evidence from the motion for new
trial hearing reveal any defense evidence that would likely have swayed the jury had it been
introduced at trial. Under the circumstances, we cannot conclude that the trial court erred
in denying the motion for new trial. Considering the entire record, we cannot say that the
alleged conduct of trial counsel was not the product of a reasoned trial strategy or that, but
for such conduct, Mitchell would not have been convicted. Issues three, four, and five are
overruled.

 Mitchell's next two issues allege punishment phase ineffective assistance of counsel. 
The test of Strickland v. Washington applies. Hernandez v. State, 988 S.W.2d 770 (Tex.
Crim. App. 1999). Mitchell complains that counsel was ineffective in failing to object to
improper argument by the State. During jury argument, the prosecutor added the age
differences between Mitchell and the three witnesses who testified Mitchell abused them
sexually. At the motion for new trial hearing, trial counsel stated he made a conscious
decision to not object to this argument because he found arguments of this type to be
unpersuasive with juries. On appeal, Mitchell contends the argument is an invitation for the
jury to reach a verdict based upon a method, formula, or quotient. The prosecutor did not ask
the jury to agree to divide by twelve the total number of the years of imprisonment suggested
by each juror; therefore, the prosecutor did not argue for a quotient verdict. See Ramsey v.
State, 140 Tex. Crim. 561, 146 S.W.2d 192, 193 (1940). It appears the prosecutor was
arguing that the defendant stole his victims' youth, and that a sentence that was the
equivalent of their combined age differences would be appropriate. We do not second guess
trial counsel's assessment of the efficacy of such an argument.

 The appellant also contends trial counsel provided ineffective assistance by failing to
"specifically ask the venire individually if they could assess a minimum sentence of five (5)
years in the instant case." Mitchell's trial attorneys were not asked about their jury selection
strategy during the motion for new trial hearing. The record reflects that the prosecutor
questioned the venire about considering the minimum sentence. Trial counsel challenged for
cause based upon a veniremember's response to the minimum punishment range. Counsel
may have been satisfied with the responses elicited by the prosecutor, and decided to
concentrate on other matters. On the record before us, we cannot determine that counsel's
conduct in voir dire fell below prevailing standards of professional norms. Especially in light
of the nature of the offense, which involved a long-term pattern of sexual abuse and
exploitation of the family relationship, we cannot say that the long length of the sentence was
the product of counsel's performance rather than the jury's reasoned assessment of a
punishment appropriate for this case. Issues six and seven are overruled.

 Mitchell's final two issues contend the trial court erred in sealing a jury
communication and in excluding other documents from the clerk's record. The documents
to which he refers are notes from the jury, the trial court's responses to the notes, and the jury
lists. Contrary to the appellant's assertion that the documents were excluded from the record,
the documents are indexed in the clerk's record and were provided to the Court in a sealed
envelope as part of the clerk's record. The appellate clerk's acknowledgment of filing
notified the parties that we received the envelope. We assume the trial court clerk provided
the documents in a sealed envelope to protect the privacy of the members of the jury. See
Tex. Code Crim. Proc. Ann. art. 35.29 (Vernon 2006). Although he complains on appeal
that the trial court sealed these records, Mitchell does not show that he presented a motion
to the trial court. See Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); Hooker
v. State, 932 S.W.2d 712, 716-17 (Tex. App.--Beaumont 1996, no pet.). The appellant did
not file a motion in this Court for access to the sealed portion of the clerk's record. See
generally Lomax v. State, 153 S.W.3d 582, 585 (Tex. App.--Waco 2004, order). Issues eight
and nine are overruled. The judgment is affirmed.

 AFFIRMED.


 ______________________________

 STEVE MCKEITHEN

 Chief Justice


Submitted on October 19, 2006

Opinion Delivered November 8, 2006

Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.