

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00260-CR
_____

LARRY WAYNE ASHLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 27,049

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Samantha Smith[1] lived with two of her aunts across the street from Larry Wayne Ashley. Samantha was twenty-four years old at the time of alleged crimes against her, but her approximate functioning mental age was not more than ten years.[2]

Ashley did odd jobs for Samantha's aunts and had access to a key to their house. Occasionally, Ashley or his wife would let Samantha into the aunts' house when she returned from her rehabilitation programs or her school. But then, according to the evidence at trial, various sexual acts occurred between Ashley and Samantha during 2009.

As a result, Ashley was charged with and convicted of aggravated sexual assault of a disabled person. TEX. PENAL CODE ANN. § 22.021(a) (West Supp. 2011).[3] Ashley claims error in the trial court's admission of five different instances of allegedly extraneous-offense evidence and in the admission of opinion testimony from one of the State's witnesses. We affirm the trial court's judgment and sentence because (1) as to points of error one, three, four, and five, the challenged evidence did not describe an extraneous offense; (2) as to point of error two, very similar evidence was admitted elsewhere without objection; and (3) admitting Sharon Ory's opinion testimony was not an abuse of discretion.

---

[1]The State's indictment referred to the victim as "Sam Smith"; the investigator indicated this was done at the request of "Samantha's" aunt and caregiver. In order to offer some privacy to the victim and her family, we have elected to call her Samantha in our opinion. *See generally* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2011).

[2]Samantha had been diagnosed as moderately mentally retarded; and as having autistic or Asperger disorder. Her IQ was forty-nine.

[3]In a single trial, he was convicted of another allegation of aggravated sexual assault on a disabled person, charged in a separate indictment. We address Ashley's appeal of the conviction in that cause in our opinion in cause number 06-11-00261-CR, issued on even date herewith.

*(1)*    *As to Points of Error One, Three, Four, and Five, the Challenged Evidence Did Not Describe an Extraneous Offense*

Ashley, in his points of error one through five, complains of the admission, over his objection, of five different segments of Samantha's testimony. This testimony is referenced only by page numbers in the reporter's record, not by any description of, or the actual words constituting, the testimony. As to each of these points of error, Ashley claims that admission of the testimony at the designated place in the record was error, because each is evidence of an extraneous offense.[4] The problem with Ashley's approach in urging these five points of error is the inexact, and in some respects erroneous, page references, leaving it to this Court to guess the precise testimony he attacks in each point.[5]

---

[4]The State argues in part that Article 38.37 of the Texas Code of Criminal Procedure authorizes admission of any instances of "other crimes, wrongs, or acts committed by the defendant against the child who is the victim . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West Supp. 2011). Ashley seems to concede the applicability of Article 38.37, but argues that does not automatically mandate admission of the challenged evidence. By our reading, Article 38.37 applies only to enumerated offenses committed against children under the age of seventeen. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1 (West Supp. 2011). Samantha was in her early twenties at the time of the alleged offenses; we have found no authority extending Article 38.37 to disabled victims. We are able to resolve this issue, though, without examining whether Article 38.37 applies.

[5]For example, each of the three times point of error one is stated in Ashley's brief, the brief cites pages 116–17 of volume four of the reporter's record as being the location of the offending testimony. We take that reference to be a mistake, and we believe Ashley intends to complain about the testimony spanning parts of pages 115–16. Here is why.

    The span of pages 116–17 does not contain a discrete description of any encounter. Page 116 begins part way through Samantha's objected-to testimony concerning one sexual encounter, an encounter Samantha referred to as the "sixth time," described as occurring in the kitchen, arguably detailing Ashley's penile penetration of both Samantha's vagina and her anus. Her testimony concerning that encounter actually begins on page 115 and ends on page 116. At the end of page 116, Samantha seems about to move on to recounting the "seventh time" encounter, but another objection is lodged about testimony concerning incidents not listed in the indictment. After that objection is overruled, on page 117, Samantha is allowed to testify to the "seventh time," an encounter in the living room during which Ashley gets her to "play with" his sex organ. She tells the entire story on page 117. Page 117 ends with Samantha about to move on to her telling about the "eighth time" and the same objection, overruled, as to that testimony.

    The brief's only other possible source of illumination, on what testimony Ashley intends to challenge with his point of error one and its cryptic reference to pages 116–17, lies in his statement of facts detailing the testimony. On page 5 of his brief, Ashley summarizes Samantha's testimony concerning a "sixth encounter," mentions that it

Based on our best efforts, we conclude that Ashley's point of error number one complains of testimony starting at line 16 on page 115, and ending at line 16 on page 116. Samantha's description of that encounter, called the "sixth time" by her, includes arguable references to Ashley's penile penetration of both Samantha's vagina and her anus.

Point of error number two is addressed in the next section of this opinion.

Point of error three, referencing "page 121," we believe, complains of testimony starting at line 17 on page 121 and ending at line 24 on page 123. Samantha's description of that encounter, called the "eighth time" by her, includes references to the two of them "having sex together" and to Ashley digitally penetrating Samantha's vagina.

Points of error four and five present an added problem for our interpretation. Point of error four in Ashley's brief references page 124, and point of error five references pages 124–25. We can conclude only that these two refer to the same single, discrete encounter—Samantha's testimony concerning which starts at line 12 on page 124 and ends at line 10 on page 125. Samantha's description of that encounter, referenced by Samantha as being the time Ashley "tried to get the sperm out" of his penis, arguably includes a reference to Ashley's penile penetration of Samantha's vagina.

---

was admitted over an objection shown at pages 114–15, and recounts the testimony as being contained at pages 115–16 of volume 4 of the reporter's record. That, in our view, points to a discrete encounter, one Samantha calls the "sixth time." The next encounter reflected in Ashley's summary is a "seventh occasion" objected to at pages 116–17 and testified to on page 117. We take that "seventh occasion" to correspond to Samantha's reference to a "seventh time," recounted on page 117, and to Ashley's point of error number two.

Therefore, we conclude that Ashley's point of error number one intends to refer to pages 115–16 containing Samantha's full, discrete testimony to the "sixth time" story. We address it as such.

We will address these segments of Samantha's testimony as being responsive to Ashley's points of error one, three, four, and five, each complaining that the trial court erroneously admitted evidence of extraneous offenses.

"An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is *not shown in the charging papers.*" *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996) (citations omitted); *see also Martinez v. State*, 190 S.W.3d 254, 262–63 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (testimony defendant touched her "many times" not extraneous evidence, but evidence of multiple occurrences of offense alleged in indictment); *Brown v. State*, 6 S.W.3d 571, 576 (Tex. App.—Tyler 1999, pet. ref'd); *Worley v. State*, 870 S.W.2d 620, 621–22 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

The State filed two indictments: Cause number 27,049 alleged in two paragraphs that, on or about June 9, 2009, Ashley caused the penetration of the anus or sexual organ of Samantha, a disabled person, by Ashley's sexual organ; and that Ashley caused the anus or sexual organ of Samantha, a disabled person, to contact Ashley's sexual organ. The indictment in cause number 27,050 alleged in two paragraphs that, on or about April 15, 2009, Ashley caused the penetration with his finger of the sexual organ of Samantha, a disabled person; and that he caused Samantha's anus or sexual organ to contact Ashley's sexual organ.[6] In the evidence, more than ten occasions of sexual contact and assault perpetrated by Ashley on Samantha were described.

---

[6]Following the close of evidence, Ashley asked the State be made to elect which offense, in each indictment, for which it would seek convictions. The State made its elections, and the jury charge authorized convictions for penetration of Samantha's anus or sexual organ by Ashley's sexual organ in cause number 27,049, and penetration of Samantha's sexual organ by Ashley's finger in cause number 27,050. The charges in each case also authorized convictions for the lesser-included offense of sexual assault if the jury found Ashley caused Samantha's sexual

5

The State, to prove the indictments' allegations, had to prove, *inter alia*, that, on or about June 9, 2009, Ashley caused his sexual organ to penetrate Samantha's anus or sexual organ; or that he caused his sexual organ to contact the anus or sexual organ of Samantha (for cause number 27,049); and that, on or around April 15, 2009, he caused the penetration of Samantha's sexual organ with his finger; or caused the anus or sexual organ of Samantha to contact his sexual organ. The State is not bound by the date alleged in the indictments: the State's evidence just had to establish that the charged offenses occurred before the presentation of the indictment and that the alleged crimes were not so remote as to be barred by limitations. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.02(6) (West 2009).

The State is entitled to offer proof of conduct alleged in the indictment; if more than one incident is proved, the defendant's remedy is to make the State elect which conduct it is relying on for a conviction.[7] In *Rodriguez v. State*, 104 S.W.3d 87, 91 (Tex. Crim. App. 2003), the Texas Court of Criminal Appeals held that, where a witness testified Rodriguez had delivered cocaine to her twenty to thirty times in a nine-month period predating the indictment, such acts were not extraneous offenses, but rather were repeated commission of the offense alleged in the indictment. Because the testimony of Samantha, describing multiple acts by Ashley, all

---

organ to contact Ashley's sexual organ; the lesser-included application paragraphs did not include language requiring a finding that the victim was a disabled person.

[7]When "one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988).

described acts which could constitute the offenses alleged in the indictments, those acts were not extraneous offenses, and there was no error in admitting testimony describing those acts.

At least three of the acts about which Ashley complains described acts alleged in the two indictments. Points of error one, three, four, and five describe either contact of Ashley's sexual organ with Samantha's sexual organ or anus, or penetration by Ashley's sexual organ of Samantha's sexual organ or anus. The evidence complained of by Ashley in these points of error all sets out one or more of the offenses originally charged and under which the State was permitted to introduce evidence. Therefore, none of this evidence sets out extraneous offenses.

We note also that Samantha at least arguably, without objection, testified to various other acts of penile or digital penetration by Ashley. Even if the admission of that other testimony would not waive the error complained of here, it would render it harmless.

*(2)    As to Point of Error Two, Very Similar Evidence Was Admitted Elsewhere Without Objection*

Point of error two, complaining of Samantha's testimony describing a time she was waiting for her bus and Ashley made her "play with" his penis, does not describe any act of penetration or any contact with her sexual organ or anus. Thus, it is not an act alleged in the indictments and is an extraneous act. Thus, we address it separately.

Samantha described at least one, possibly two, other incidents of the same conduct— Ashley making her "play with" his penis. Also, testimony with essentially the same content was admitted elsewhere without objection. "[Q]uestions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in

7

admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection." *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999). Any error in admitting the acts complained of in point two was harmless.[8]

*(3)     Admitting Sharon Ory's Opinion Testimony Was Not an Abuse Of Discretion*

Finally, Ashley complains that no foundation was laid to allow State's witness Sharon Ory to state an expert opinion that Samantha was incapable of fabricating the sexual acts Samantha alleged Ashley to have perpetrated on her.[9] Ory worked for the mental health and retardation rehabilitation center where Samantha attended classes and received services. The State asked Ory if she thought, based on her experience with Samantha, that Samantha was "capable of fabricating a detailed sexual encounter." Ory answered, "No. I don't think she would have the knowledge to fabricate one. I don't think she would know the details." In answering Ashley's trial objection, the State told the trial court it was offering Ory's opinion not as an expert, but "as a  person who has spent time with [Samantha] every day."

Rule 701 permits nonexpert (lay) witness testimony "in the form of opinions or inferences . . . limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX. R. EVID. 701. "Perceptions refer to a witness's

---

[8]The sexual assault nurse examiner who examined Samantha testified from her notes, reading descriptions of the various sexual encounters Samantha related to the nurse. These related events corresponded to Samantha's courtroom testimony, including the acts complained of on appeal. Ashley lodged no objection to the nurse's testimony.

[9]The complaint speaks to Ory's alleged expert opinion; it does not claim that Ory improperly vouched for Samantha's truthfulness. *See Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011) (expert opinion on general truthfulness of mentally challenged individuals improper). We address the complaint as presented here.

8

interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Admission under Rule 701 requires the witness' testimony be based on his or her perception; the witness must have personally observed or experienced the events about which the witness is testifying. *Id.* (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)). "Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations." *Id.*

Ashley cites *Fairow* for its statement that "[i]t is impossible for a witness to possess personal knowledge of what someone else is thinking." *Fairow*, 943 S.W.2d at 899. *Fairow* goes on to say that "[a]n opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events (i.e. his own senses or experience)." As an example, *Fairow* discusses *Doyle v. State*, 875 S.W.2d 21 (Tex. App.—Tyler 1994, no pet.), where two prison guards were allowed to testify about their observations of an inmate striking another guard. The guards were properly allowed to say they thought the defendant's blow to the third guard was intentional. *Fairow*, 943 S.W.2d at 898 (citing *Doyle*, 875 S.W.2d at 22–23). Although the testifying guards did not have personal knowledge of the defendant's mental state, they

> did, however, witness the attack and thus were qualified to give an opinion based on their perception of the event. So, while a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The jury is then free to give as much or as little weight to the opinion as it sees fit. Therefore, we

9

conclude that once the proponent of the opinion establishes personal knowledge of the facts underlying the opinion, he has satisfied the perception requirement of Rule 701. This is so even if the opinion concerns culpable mental state.

*Id.* at 899. At issue in *Fairow* was whether one witness could offer testimony as to the mental state of another witness. That issue is not at play here. Ory's testimony was based on her opinion of Samantha's ability to describe graphic sexual encounters, based on Ory's personal knowledge and experience with Samantha. Ory had worked with Samantha about a year, on a daily basis. She testified Samantha still believed in Santa Claus and the Easter Bunny; she testified, without objection, that Samantha knew the difference between a lie and the truth; Ory had never known Samantha to lie or "make up a story."

In deciding whether to admit testimony under Rule 701, the trial court must first determine the witness has personal knowledge of the events on which his or her opinion is drawn; and if the opinion is rationally based on that knowledge. *Id.* at 898. *Fairow* referred to this initial analysis as the perception requirement. *Id.* Personal knowledge will often come directly from the witness' senses. An opinion is rationally based on perception, if it is an opinion that a reasonable person could draw under the circumstances. *Id*. at 900.

If the proffered opinion testimony meets the perception requirement, Rule 701 next requires that the evidence be helpful to the trier of fact either in understanding the witness' testimony or in determining a fact in issue. TEX. R. EVID. 701. There is no bright line rule as to when an opinion is helpful; general evidentiary considerations of relevance and balancing will assist the trial court's determination. *Fairow*, 943 S.W.2d 900. Whether an opinion meets the fundamental requirements of Rule 701 is within the sound discretion of the trial court, and its

10

decision regarding admissibility should be overturned only if it abuses its discretion. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992).

Here, Ory had worked closely with Samantha about a year, and had personal knowledge of Samantha's communication skills and general intelligence level. Before hearing from Samantha about the incidents with Ashley, Ory could not remember Samantha ever expressing interest in having a boyfriend or discussing sexual matters. Ory initially was worried about the content of a letter Samantha gave her to mail to Santa Claus. The letter from Samantha asked Santa Claus not to tell Samantha's aunt "what I did with Larry [Ashley]. I don't want my two aunts to find out what happened. I am really sorry. I don't want to get in big trouble with my two aunts. Please forgive me. I [sic] try not to do it again." The letter's contents caused Ory to talk to Samantha, who disclosed something about sexual conduct having occurred; this led Ory to contact Adult Protective Services. Ory testified she did not think Samantha understood the "gravity of the situation"; she seemed more concerned that she would be in trouble.

Based on Ory's experience with Samantha, her opinion—based on her personal knowledge of Samantha—could have been helpful to the jury. We find no abuse of discretion on the part of the trial court to allow Ory's opinion into evidence.

Even if there had been error in admitting Ory's opinion, no harm would have befallen Ashley. Both the sexual assault nurse examiner who examined Samantha, and Samantha's aunt with whom she lived, testified without objection that they did not believe Samantha could fabricate the detailed sexual encounters she described.

11

Ashley's points of error are overruled, and the trial court's judgment and sentence are affirmed.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 7, 2012
Date Decided:       June 25, 2012

Do Not Publish